IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER TODD BENTON,
    Petitioner,

vs.                                         Case No.: 3:07cv401/LAC/EMT

WALTER A. McNEIL[1]
and FLORIDA PAROLE COMMISSION,
    Respondents.
_____/

## ORDER, REPORT AND RECOMMENDATION

    This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). The Florida Parole Commission (Commission) filed an answer and relevant portions of the state court record (Doc. 17).[2] Petitioner filed a reply (Doc. 19).

    The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

    Following a jury trial in the Circuit Court for Santa Rosa County, Florida, Case No. 1990-CFA-228, Petitioner was adjudicated guilty of two counts of burglary of a structure (Counts I and

---

    [1]Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections ("DOC"), and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

    [2]Respondent McNeil filed a limited response asserting that Petitioner's claims fall under the purview of the Commission (Doc. 12).

II), two counts of trespass (Counts III and IV), one count of burglary of a conveyance (Count V), one count of grand theft auto (Count VI), two counts of petit theft (Counts VII and VIII), and one count of grand theft (Count IX) (Doc. 1 at 1, Ex. B; Doc. 17, Ex. A at 20–24). The offense conduct occurred on March 11, 1990 (Doc. 1, supporting memorandum at 1, Ex. A). He was sentenced on November 16, 1990, as a habitual offender to a term of ten (10) years of incarceration on Count I, with pre-sentence jail credit of 202 days, a consecutive term of ten (10) years of incarceration on Count II, concurrent terms of ten (10) years of incarceration on Counts V, VI, and IX, to run concurrently with the sentence for Count II, terms of one (1) year in jail on Counts III and IV, and terms of sixty (60) days in jail on Counts VII and VIII (Doc. 1, Ex. B; Doc. 17, Ex. A at 20–24). The sentencing court ordered all sentences to run concurrently with any active sentence Petitioner was then serving (*see id.*).³

Petitioner reached his tentative release date on January 26, 2006, through the accrual of actual time served and earned gain time, and was released from DOC custody on conditional release supervision, administered by the Commission, for the amount of time equal to the gain time he had accrued, or approximately fifty (50) months, with his supervision to expire on March 23, 2010 (*see* Doc. 1, supporting memorandum at 2–3; Doc. 17 at 2–3, Ex. B). In February of 2007, Petitioner was arrested for violating the terms of his supervision (Doc. 1, supporting memorandum at 2; Doc. 17 at 3, Ex. C). A violation hearing was held on March 14, 2007, before a Commission hearing examiner (Doc. 17 at 3, Ex. D). The hearing examiner determined that Petitioner was guilty of the violations (*id.*). On April 25, 2007, the Commission revoked Petitioner's conditional release supervision, ordered him returned to DOC custody, and denied credit for time Petitioner spent on

---

³According to the state court record submitted by the Commission, at the time of Petitioner's sentencing in Case No. 1990-CFA-228, he was actively serving other sentences. On July 20, 1989, Petitioner was adjudicated guilty, pursuant to a plea of nolo contendere, in the Circuit Court for Santa Rosa County, Florida, of one count of burglary of a dwelling and one count of grand theft in Case No. 89-262-CFA, and violation of probation in Case Nos. 88-I-168, 88-I-169, 88-I-170, 88-I-171, and 88-I-474 (the underlying offenses in each case were one count of burglary and one count of grand theft) (Doc. 17, Ex. A at 7–11). He was sentenced to two concurrent terms of six (6) years of incarceration in Case No. 89-262-CFA, and concurrent terms of six (6) years of incarceration on each of the VOP counts, with pre-sentence jail credit of 109 days (*id.*). The court ordered all sentences to run concurrently with any active sentence Petitioner was then serving (*id.*). Subsequently, on October 16, 1990, Petitioner was adjudicated guilty, pursuant to a guilty plea, of violating his probation in Case Nos. 89-262-CFA, 88-I-168, 88-I-169, 88-I-170, 88-I-171, and 88-I-474 (*id.* at 12–15). He was sentenced to concurrent terms of six (6) years of incarceration on each of the burglary counts and concurrent terms of five (5) years of incarceration on the grand theft counts in each case, with pre-sentence jail credit of 490 days (*id.*). The court ordered all sentences to run concurrently with any active sentence Petitioner was then serving (*id.*).

conditional release, thus requiring Petitioner to serve the remaining fifty (50) months of his sentence, less gain time that accrued from the date of his re-incarceration (Doc. 1, supporting memorandum at 2; Doc. 17 at 3, Ex. D).

On July 2, 2007, Petitioner filed a petition for writ of habeas corpus in the Circuit Court for Okaloosa County, Case No. 07-CA-3128-C, challenging the revocation of his conditional release on the ground that the curfew condition of his supervision, the violation of which served as the basis for the revocation, was imposed in violation of state law and the Ex Post Facto Clause (*see* Doc. 17, Ex. E). On October 29, 2007, the state court issued an order quashing the Commission's order of revocation and remanding the case to the hearing officer for a determination as to whether Petitioner's violations were willful and substantial (*id.*). Following a hearing, the hearing officer determined that the violations were willful and substantial, and on November 28, 2007, the Commission adopted the hearing officer's finding and again revoked Petitioner's conditional release supervision, ordered him returned to DOC custody, and denied credit for time Petitioner spent on conditional release, thus requiring Petitioner to serve the remaining months of his sentence (*id.*). Petitioner filed a motion to quash the revocation order (*id.*). The state court apparently denied Petitioner's motion, and Petitioner sought review by the Florida First District Court of Appeal (First DCA) by filing a petition for writ of certiorari. *See* <u>Benton v. Florida Parole Commission</u>, No. 1D08-1114, 2008 WL 3270869 (Fla. 1st DCA Aug. 11, 2008). The First DCA denied the petition on the merits. *Id.*

Petitioner filed the instant habeas action on September 18, 2007, while the state habeas proceeding was pending (*see* Doc. 1 at 6). In the instant petition, Petitioner challenges his placement on conditional release supervision on January 26, 2006, on the ground that the conditional release statute was applied retroactively to him in violation of the Ex Post Facto Clause (*see* Doc. 1 at 4, supporting memorandum).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[4] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683

(2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662

(2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III. PETITIONER'S CLAIM

Petitioner claims that his placement on conditional release supervision when he reached his tentative release date on January 26, 2006, violated the Ex Post Facto Clause of the Constitution (Doc. 1 at 4, supporting memorandum). Petitioner contends that the sentence imposed by the trial court expired when he reached his tentative release date on January 26, 2006, through the accumulation of actual time served and earned gain time (Doc. 1, supporting memorandum at 2, 3). He further asserts that the conditional release statute in effect at the time of his offense conduct, March 11, 1990, provided that an inmate was subject to conditional release supervision when (1) he had been convicted of a Category 1, 2, 3, or 4 offense, **and** (2) he was sentenced as a habitual offender or served a prior felony commitment, *see* Fla. Stat. § 947.1405 (1989) (*id.* at 5–6). Petitioner asserts that none of his offenses were Category 1, 2, 3, or 4, rather they were all Category 5 offenses; therefore, he was not subject to conditional release supervision (*id.* at 8). Petitioner acknowledges that in 1998, the Florida Supreme Court held that an inmate convicted as a habitual offender but not convicted of a Category 1, 2, 3, or 4 offense was subject to placement on conditional release because "habitualization is a separate, free-standing criterion for conditional release under section 947.1405(2), Florida Statutes (1989)," *see* Deason v. Florida Department of Corrections and Florida Parole Commission, 705 So. 2d 1374 (Fla. 1998) (*see* Doc. 1, supporting memorandum at 4–10). Petitioner contends, however, that the Deason decision essentially rewrote section 947.1405(2) to require imposition of supervision on all habitual offenders whose offenses were committed prior to issuance of that decision, thereby retroactively increasing his punishment (*id.* at 6–10).

Respondent contends Petitioner failed to exhaust this claim in the state courts, and he is now procedurally barred from presenting it to the state courts; therefore, he is not entitled to federal review of his claim (Doc. 17 at 4–5). Respondent additionally contends that Petitioner's claim is without merit (*id.* at 5–11).

Regardless of whether Petitioner exhausted his claim, the undersigned concludes that Petitioner is not entitled to federal habeas relief because he has failed to demonstrate he is in custody "in violation of the Constitution or laws of the United States," *see* 28 U.S.C. § 2254(a), as discussed *infra*.[5]

Article I, Section 10, of the United States Constitution prohibits states from enacting ex post facto laws. Under the Ex Post Facto Clause, a state may not retroactively apply any law that "inflicts a greater punishment, than the law annexed to the crime, when committed." Calder v. Bull, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648 (1789). Such laws implicate the core ex post facto concerns of "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Lynce v. Mathis, 519 U.S. 433, 441, 117 S. Ct. 891, 137 L. Ed. 2d 63 (1997) (quoting Weaver v. Graham, 450 U.S. 24, 30, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981)) (emphasis in original). As the Supreme Court stated in Lynce,

> To fall within the ex post facto prohibition, a law must be retrospective—that is, "it must apply to events occurring before its enactment"—and it "must disadvantage the offender affected by it," [Weaver, 450 U.S.] at 29, 101 S. Ct., at 964, by altering the definition of criminal conduct or increasing the punishment for the crime, *see* Collins v. Youngblood, 497 U.S. 37, 50, 110 S. Ct. 2715, 2723, 111 L. Ed. 2d 30 (1990).

519 U.S. at 441. The question of whether a particular legislative change produces consequences sufficient to invoke the prohibitions of the Ex Post Facto Clause is a matter of "degree." Beazell v. Ohio, 269 U.S. 167, 46 S. Ct. 68, 70 L. Ed. 216 (1925).

It is clear that not every legislative change that "disadvantages" an offender or affects a prisoner's "opportunity to take advantage of the provisions for early release" violates the Constitution. California Dept. of Corrections v. Morales, 514 U.S. 499, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995). Rather, a law must produce "a sufficient risk of increasing the measure of punishment attached to the covered crimes." Morales, 514 U.S. 509. While no exact formula for determining when a particular legislative change produces a sufficient effect on punishment to fall within the prohibitions for the Ex Post Facto Clause, the United States Supreme Court has made clear that the risk of affecting a prisoner's actual term of confinement must be more than

---

[5] The court may reach the merits of Petitioner's claim notwithstanding his failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).

"speculative and attenuated." *Id.* Under Morales, the statute must affect the original punishment and it must produce a sufficient risk of increasing the original punishment. *Id.*

The prohibition against ex post facto laws applies directly to state legislatures, but the Supreme Court has held that the Due Process Clause protects criminal defendants against action by the judiciary that would contravene the Ex Post Facto Clause if done by the legislature. Marks v. United States, 430 U.S. 188, 191–92, 97 S. Ct. 990, 992–93, 51 L. Ed. 2d 260 (1977); Bouie v. City of Columbia, 378 U.S. 347, 353–54, 84 S. Ct. 1697, 1702–03, 12 L. Ed. 2d 894 (1964). As the Supreme Court stated in Bouie:

> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids. . . . If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

Bouie, 378 U.S. at 353–54.

To determine whether Petitioner has established an ex post facto violation, the court must examine the relevant state statutory scheme at the time Petitioner committed his offenses, March of 1990. At that time, the Florida Legislature had enacted section 947.1405, known as the Conditional Release Program Act, which provided in relevant part:

> (2) Any inmate who is convicted of a crime committed on or after October 1, 1988, which crime is or was contained in category 1, category 2, category 3, or category 4 of Rule 3.701 and Rule 3.988, Florida Rules of Criminal Procedure, and who has served at least one prior felony commitment at a state or federal correctional institution or is sentenced as a habitual or violent habitual offender pursuant to s. 775.084, shall, upon reaching the tentative release date or provisional release date, whichever is earlier, as established by the Department of Corrections, be released under supervision subject to specified terms and conditions.

Fla. Stat. § 947.1405 (1989).

Also, various amendments to existing laws were added in 1988, including subsection (11) of section 921.001, the statute relating to the state sentencing commission, which provided as follows:

> A person who is convicted of a crime committed on or after October 1, 1988, shall be released from incarceration only:
> (a) Upon expiration of his sentence;
> (b) Upon expiration of his sentence as reduced by accumulated gain-time;

(c) As directed by an executive order granting clemency;
(d) Upon attaining the provisional release date; or
(e) Upon placement in a conditional release program pursuant to s. 947.1405.

Fla. Stat. § 921.001(11) (1989).[6] The legislature also added subsection two (2) to section 944.291, the statute governing release of prisoners by reason of gain-time allowances, to provide that inmates who are conditional release eligible are prohibited from being totally released from service of a sentence by mere gain-time accrual or application:

> (2) Any prisoner who is convicted of a crime committed on or after October 1, 1988, which crime is contained in category 1, category 2, category 3, or category 4 of Rule 3.701 and Rule 3.988, Florida Rules of Criminal Procedure, and who has served at least one prior felony commitment at a state or federal correctional institution, or is a habitual or violent habitual offender pursuant to s. 775.084, may only be released under conditional release supervision as described in Chapter 947.  Not fewer than 90 days prior to the tentative release date, the department shall provide the commission with the name and inmate identification number for each eligible inmate.

Fla. Stat. § 944.291(2) (1989).[7]

The legislature also amended the habitual offender statute, section 775.084, with language that appeared to conflict with the conditional release statute, section 947.1405. The amendment to section 775.084 provided:

> A sentence imposed under this section shall not be subject to the provisions of s. 921.001. The provisions of chapter 947 shall not be applied to such person.  A defendant sentenced under this section shall not be eligible for gain-time granted by the Department of Corrections except that the department may grant up to 20 days of incentive gain-time each month as provided for in s. 944.275(4)(b).

Fla. Stat. § 775.084(4)(e) (1989).[8]

Although this court will decide under federal law whether an ex post facto violation has occurred, it must accept the Florida courts' interpretation of the state's own statutes. Missouri v. Hunter, 459 U.S. 359, 368, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983). According to the Florida

---

[6]Section 921.001(11), Fla. Stat. (Supp. 1988) is currently section 921.001(10)(a), Fla. Stat. (2008). Section 921.001(10)(a), Fla. Stat. (2008) essentially mirrors the 1988 version of section 921.001(11), except that the applicable dates of the committed crime include those crimes committed on or after October 1, 1983 but before January 1, 1994.

[7]The same version of Section 944.291(2), Fla. Stat. exists today.  Fla. Stat. § 944.291(2) (2008).

[8]This language was removed from the statute in 1993.

Supreme Court, Florida courts are obligated to adopt an interpretation of state statutes that harmonizes two related, if conflicting, statutes while giving effect to both. Jones v. State, 813 So. 2d 22, 25 (Fla. 2002) (citation omitted). Additionally, a specific statutory provision controls over a general statutory provision. *Id.* As previously noted, both section 775.084(4)(e), the habitual offender statute, and section 947.1405, the conditional release statute, were enacted in the 1988 legislative session. It is possible to harmonize sections 947.1405 and 775.084 by recognizing that "chapter 947," referenced in the habitual offender statute, applied not only to conditional release but to other programs administered by the Commission, such as parole. Inasmuch as the provisions of section 947.1405 are specific, and the reference to "chapter 947" in section 775.084(4)(e) is general, the specific language of section 947.1405 controls over the more general sentencing provisions of section 775.084.

Also important to the statutory analysis is the fact that in the 1993 legislative session, the Florida Legislature recognized the possibly conflicting statutory provisions of sections 775.084(4)(e) and 947.1405, and amended section 775.084(4)(e) to read in pertinent part: "The provisions of s. 947.1405 shall apply to persons sentenced as habitual felony offenders and persons sentenced as habitual violent felony offenders." Fla. Stat. § 775.084(4)(e) (1993). In Lowry v. Parole and Probation Commission, 473 So. 2d 1248, 1250 (Fla. 1985), the Florida Supreme Court held that when an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof, and it is proper for the court to consider subsequent legislation in arriving at the proper interpretation of the prior statute. *Id.* at 1250 (citations omitted); *see also* Parker v. State, 406 So.2d 1089 (Fla. 1981) (recognizing that the court has the right and duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation).

Utilizing these rules of statutory construction, the Florida Supreme Court held in Deason v. Florida Department of Corrections and Florida Parole Commission, that in enacting the 1989 version of section 947.1405(2), which was effective at the time Petitioner committed his offenses, the legislature intended habitualization to be a separate, free-standing criterion for conditional release. 705 So. 2d at 1375. This interpretation did not enlarge the conditional release statute, it merely clarified the legislature's intent regarding the inclusion of all habitual felony offenders in the

conditional release program.  Therefore, Petitioner failed to demonstrate that the Deason decision constituted a retroactive expansion of criminal statutes, in violation of the Ex Post Facto Clause.

Additionally, Petitioner's placement on supervision did not constitute an increase in punishment for ex post facto purposes.  The character of conditional release is defined by state law.  As to that, the Florida Supreme Court has said, "conditional release is not an increased punishment program at all, but rather an assistance program designed to 'help these former inmates in bridging the gap between prison and the outside world.'"  Mayes v. Moore, 827 So. 2d 967, 971 (Fla. 2002) (quoting Duncan v. Moore, 754 So. 2d 708, 710 (Fla. 2000)).  The Mayes court went on to state:

> [C]onditional release is not a form of sentence, and it is not imposed by a court. Although the statute may impose an undesirable condition upon the release of those subject to the statutory requirements by converting gain time that might be awarded into postrelease supervision, neither gain time nor conditional release is a true part of a criminal sentence.  An inmate's eligibility for conditional release is established by statute.  Inmates who are subject to conditional release are identified and their placement on conditional release is required, not by the sentencing court, but by the Parole Commission.  Thus, for all of these reasons, we conclude that conditional release is not a recidivist program which imposes an enhanced criminal penalty or sentence.

*Id.*

As previously noted, Petitioner's offenses were committed in March of 1990, and he was sentenced as a habitual offender later that year; therefore, according to state law in existence at the time he committed his offenses, his sentence did not expire when he reached his tentative release date.  The original sentence remained in effect, and when he reached that date, he was required to serve a portion of his sentence, equivalent to the amount of gain time he had earned, under supervision by the Commission.  Indeed, at the time of Petitioner's release on conditional release on January 26, 2006, he had actually served less than sixteen (16) years of the twenty-year sentence originally imposed by the sentencing court on November 16, 1990.  Through the benefit of gain time, Petitioner was released from imprisonment approximately four (4) years early to serve the rest of his sentence on conditional release supervision.  The Florida Supreme Court's decision in Deason did not increase Petitioner's punishment beyond what was prescribed when he committed the crimes in March of 1990, or beyond the sentence originally imposed by the trial court.  Therefore, Petitioner

has failed to demonstrate an ex post facto violation with respect to his placement on conditional release supervision.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter A. McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 19th day of February 2009.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**